# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **HELEN J. JONES,** | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) CASE NO. 06-CV-418-FHM |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of the** | ) |
| **Social Security Administration,**[1] | ) |
| | ) |
| DEFENDANT. | ) |

## ORDER

Plaintiff, Helen J. Jones, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits. In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir. 2003).

---

[1] On February 1, 2007, Michael J. Astrue was confirmed as Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Jo Anne B. Barnhart the former Commissioner, as defendant in this case. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff applied for disability insurance benefits on September 19, 2000, claiming to have been unable to work since June 11, 1990, due to diabetes, arthritis, back pain and weakness of the left hand and leg. [R. 285]. To qualify for disability insurance benefits, Plaintiff must establish that she was disabled before December 31, 1995, the date she was last insured for disability benefits.[2] In order to establish entitlement to disability benefits, the evidence must support a finding of disability between June 11, 1990 and December 31, 1995.

## **Background**

Plaintiff's application was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) was held October 9, 2002. [R. 20-55]. By decision dated January 9, 2003, the ALJ denied Plaintiff's claim for benefits. [R. 9-17]. The Appeals Council denied Plaintiff's request for review on March 5, 2003.[3] [R. 3-4]. Plaintiff appealed the Commissioner's decision to the United States District Court for the Northern District of Oklahoma and on August 3, 2004, the Court reversed and

---

[2] *See Miller v. Chater*, 99 F.3d 972 (10th Cir. 1996). " '[T]he relevant analysis is whether the claimant was actually disabled prior to the expiration of [his] insured status.' " *Hinchey v. Shalala*, 29 F.3d 428, 431 (8th Cir. 1994) (quoting *Potter v. Secretary of Health & Human Servs*, 905 F.2d 1346, 1348-49 (10th Cir. 1990) (per curiam) (*Potter*)).

[3] The action of the Appeals Council represented the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

remanded the claim to the Commissioner for further proceedings. [R. 338-344]. The ALJ conducted another hearing on November 29, 2005, after which he again denied disability insurance benefits. [R. 284-289; 393-451].[4] That decision, dated January 13, 2006, is the subject of this appeal. Plaintiff was born June 26, 1942, and was 63 years old when the decision was entered. [R. 70, 285].

The ALJ determined that Plaintiff has a severe impairment consisting of degenerative disk disease. [R. 288]. He found that Plaintiff retains the residual functional capacity (RFC) to lift 20 pounds occasionally or 10 pounds frequently and stand/walk or sit for 6 hours during an 8-hour workday with normal breaks. [R.288]. He determined that Plaintiff's RFC precluded return to her past relevant work (PRW) as a nurses' aide but, based upon the testimony of a Vocational Expert (VE), that there are a number of jobs in the economy that Plaintiff can perform. [R. 288-289]. He concluded, therefore, that Plaintiff was not disabled at any time through the date of his decision (sic). [R. 289]. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the ALJ's decision should be reversed because: 1) The ALJ did not give proper weight to the opinions of Plaintiff's treating physician; 2) The ALJ "again" failed to address Plaintiff's RFC, credibility, hand complaints or *res judicata* issue; 3) No evidence supports the RFC as found by the ALJ in his decision; 4) The ALJ

---

[4] A hearing was commenced on February 18, 2005, but continued to a later date to allow the medical expert to review additional documents. [R. 452-462].

erred by not including some limitation for Plaintiff's hands in his hypothetical questions to the VE; and 5) The ALJ did not properly assess Plaintiff's pain complaints. [Plaintiff's Brief, p. 2]. For the following reasons, the Court finds this case must be reversed and remanded to the Commissioner.

### The Court's August 3, 2004 Order

In reversing and remanding the ALJ's January 9, 2003 decision, the Court found the existing record and findings did not support the denial of benefits on the ALJ's stated rationale. [R. 340]. This holding was based upon the failure of the ALJ to discuss the opinion of Plaintiff's treating physician, Terrill H. Simmons, M.D., which was given during a deposition on December 19, 1990, regarding the severity of Plaintiff's pain. [R. 147-164].

Dr. Simmons testified he had been treating Plaintiff since 1986 for her back pain. [R. 150]. Plaintiff was released from Dr. Simmons' care in February 1987, was seen for continuing back pain in May 1987, was again released and a final report was written in June 1987. [R. 151]. Dr. Simmons saw Plaintiff again on June 11, 1990, the date Plaintiff claims her disability began, for "nagging back pain over the three years but her pain had began (sic) to increase in severity." [R. 151]. He obtained a CT scan of the lumbar spine which demonstrated a bulging disc. [R. 152]. At his deposition, when asked what treatment he proposed, Dr. Simmons said:

> I think the patient - - I've already pretty well resolved her medical problems. She needs to lose weight, get herself in condition. She has had basically all that we have to offer her, and she is still in pain. She is not a surgical candidate because of her weight.

[R. 154]. Dr. Simmons testified he had recommended a weight reduction program but that Plaintiff was trying to lose weight on her own and was unsuccessful. [R. 154]. He testified Plaintiff is not able to do her job as a nurse at the hospital. [R. 154-155]. He said:

> I monitored her through September, and her weight has stayed at 200 pounds. She can't take it off. She wasn't able to get in any program. I told her we would see her again when she loses some weight.

[R. 155]. Dr. Simmons stated Plaintiff's choices were a weight reduction program or not having surgery. *Id.* The remainder of that page of the deposition transcript is as follows:

> Q. And if she doesn't have surgery, what is the consequence of that?
>
> A. Her pain will stay the way it is.
>
> Q. Okay. And is it debilitating, the pain that she has?
>
> A. Yes.
>
> Q. Okay. Can she function in her employment at the hospital in the condition she is in now?
>
> A. No.

[R. 155]. When asked whether or not Plaintiff has been temporarily totally disabled since he last saw her on June 11, 1990, Dr. Simmons responded: "June the 11th, 1990, yes, sir." [R. 156]. His opinion was: "That she has been unable all during this treatment period." [R. 156].

As the Court observed in its August 3, 2004 order, the ALJ did not address this testimony. [R. 340]. The case was remanded to the Commissioner to perform a proper analysis of the treating physician's opinion and to address Plaintiff's contentions

5

concerning her RFC and credibility in light of the conclusions reached after consideration of that evidence. [R. 341]. The Court also urged the ALJ to include a discussion of Plaintiff's hand complaints upon remand. [R. 341].

## **The ALJ's Decision**

After conducting a hearing on November 29, 2005, the ALJ entered a decision on January 13, 2006, again denying disability insurance benefits. [R. 284-289]. In that decision, the ALJ addressed Dr. Simmons' deposition testimony. [R. 286]. The ALJ noted Dr. Simmons' description of the claimant was "temporarily" totally disabled, not "permanent." *Id.* The ALJ cited the Certification of Treatment form of June 11, 1990, on which Dr. Simmons estimated future disability to be 3 to four weeks. [R. 286, 134]. The ALJ referred to a letter dated January 10, 1991, in which Dr. Simmons recommended to the claimant that she engage in weight reduction, swimming, walking and general exercises and said: "It is reasonable to assume that if Dr. Simmons believed the claimant was capable of these physical activities, he did not simultaneously hold that she was physically disabled." [R. 286, 135]. The ALJ also found that Plaintiff failed to follow the prescribed treatment without good reason because she failed to lose weight as directed by Dr. Simmons. [R. 286]. He said: "Because Dr. Simmons clearly stated that the weight loss was necessary for her back pain to resolve, Ms. Jones can be held responsible for not doing her part in stopping her discomfort." [R. 286].

Although he did not state that he was doing so, the ALJ apparently adopted the opinion expressed by Woodrow Janese, M.D., a neurosurgeon, who testified via telephone at the hearing on November 29, 2005. [R. 286]. Dr. Janese assumed that,

6

because Plaintiff did not see a doctor for months after September 1990, her condition must have improved and that she was then able to do 80%-90% of her daily activities. [R. 429].

### Dr. Simmons' Treatment Record

When Dr. Simmons saw Plaintiff on June 11, 1990, he described her as overweight and noted her past history of bulging disk with lumbosacral strain. [R. 133]. Upon examination, Dr. Simmons recorded restricted range of motion (ROM), restricted rotation, markedly positive bilateral straight leg raising (SLR) and equivocal S1 dermatone loss on the left. [R. 133]. He ordered physical therapy and a CT scan and took Plaintiff off work. *Id.* He signed the Certification of Treatment form described above. [R. 134].

On June 27, 1990, Dr. Simmons noted Plaintiff's continuing back pain, radiating into the hips and legs, rescheduled her missed CT exam appointment and said: "WORKING DX remains the same."

Dr. Simmons discussed the results of Plaintiff's CT scan with her on July 6, 1990. [R. 132]. He reported:

> She has a bulging, but not a ruptured disk at L4. I am worried about her, though, because of her significant amount of back pain and in particular, leg pain with numbness, findings compatible with sciatica. I will have her injected with an epidural and see if this will not improve her condition.
> EXAM today reveals marked limitation of motion of the back, difficulty sitting, positive SLR at 30-40° on the Rt and contralateral positive test.
> IMPRESSION: Disk injury that should respond to conservative treatment but minimal improvement to date.
> PLAN: Epidural steroid

[R. 132].

On July 23, 1990, fully six weeks after his initial evaluation on June 11, 1990, Dr. Simmons wrote that Plaintiff's back pain was no better; her right leg pain and hip pain were slightly better. [R. 132]. He reported the epidural steroids provided only minimal improvement. He said:

> Pt is advised she needs to be careful with her activities; currently, barely functioning at home. She is driving for short periods of time. I would suggest sleeping, walking, minimal sitting, no lifting.

[R. 132].

On August 13, 1990, Dr. Simmons reported:

> We're not making any progress. Therapy helping only minimally, still with numbness of her Rt foot, positive SLR on the Rt at 30°. Marked limitation of motion of the back. Limitation of function in the exam room compatible with a very painful back, restricting motion, difficulty sitting and standing up. ROM of the back is less than 50% of normal. She can bend forward 30-40°, extend slightly past neutral, has lateral bending, Lt. and Rt.
> IMPRESSION remains bulging disk, Rt leg sciatica.
> There is probably a fragment pushing on the nerve root. Pt is advised that at 198 lbs. and 5'1", she would be a high surgical risk. I feel the only way we'll change this around would be to decrease the stress on her back. Weight reduction and back program is highly recommended. We'll try to get her into the weight reduction program, continue her with PT, medications. PROGNOSIS: Guarded.

[R. 131]. This was two months after Dr. Simmons signed the Certification of Treatment estimating Plaintiff's period of temporary total disability to be 3-4 weeks.

On September 5, 1990, Dr. Simmons reported that not much had changed subjectively. [R. 131]. He again recorded objective findings of stiffness, restricted motion, positive SLR and painful back. *Id.* He advised Plaintiff she had to lose weight and get her back into condition for conservative treatment to work. *Id.* "She cannot

8

expect the back to resolve as long as her weight stays at 200 lbs. and she is not a surgical candidate for a typical laminectomy in my opinion, with her weight at 200 lbs."

*Id.*

On October 5, 1990, Dr. Simmons wrote:

> Follow up diskogenic injury L4-L5. Subjective complaints: Back pain, hip pain, restricted activity, pain with therapy, pain with rest. Two pound weight reduction over the last 1 month. No significant change in pain pattern. Work up in the past demonstrated bulging annulus at L4-L5. Current weight is approximately 198 lbs. Pt is 5'1".
> Objectively, Pt stands and moves about in obvious discomfort. She is tender at L4-L5, has restricted ROM of the back. Restricted lateral bending and forward flexion.
> IMPRESSION: Remains bulging disk L4-L5
> DISCUSSION: I feel if therapy is aggravating, it should be discontinued. She is reaching a plateau in medical care. We either need to plan on resolving the situation or accepting it. Pt so advised. Follow up 1 mo., off work. Presc. written, Elavil 50 mg., #30.

[R. 130]. This was four months after the Certification of Treatment was signed.

On November 9, 1990, Dr. Simmons reevaluated Plaintiff's low back and right leg pain. [R. 130]. He reported Plaintiff complained that her pain had gradually increased in severity. *Id.* Physical examination revealed abnormal posture, increased lumbar lordosis, forward bending for 20° of forward flexion, extends to 15° of extension, 30° of Lt lateral bending, 30° Rt lateral bending, rotation is normal, can stand on her tiptoes only with help, cannot squat, positive SLR on the Lt in the sitting position, mildly, significant positive SLR on the Rt at 40°, negative on the Lt, both sitting and supine. *Id.* Dr. Simmons described Plaintiff's condition as "...at an empasse. We have nothing else to offer her with conservative regimen, I do not recommend surgical intervention.

9

Weight reduction, swimming, walking and general exercises, all would thought to be of benefit. Condition is stable at this time." *Id.*

Dr. Simmons wrote a Final Medical Report on March 23, 1993. [R. 128-129]. He set forth Plaintiff's treatment history, stating Plaintiff was followed through the Spring and Summer of 1990 with persistent symptoms in her low back area. [R. 128]. He said:

> She was then lost to follow up from January to November 1991 and then followed again through 1992, because of persistent back, right hip and right leg pain. Evaluation has revealed persistent loss of motion of the back. MRI has demonstrated degenerative changes to the lower two levels of the spine without evidence of disk herniation, but a bulging disk had been appreciated at L5-S1 and facet degeneration and degenerative disk disease at L4-L5.
>
> Ms. Jones has been advised I recommend weight reduction and an exercise regimen vs. surgical intervention. I feel this coupled with restricted activities offers her the best resolution of her back pain. She has not returned to work. She has continued to complain of pain on each visit, condition being basically status quo. She has been unable to change her body habitat. I have been reluctant to offer more aggressive treatment except for Physical Therapy. She has reached a plateau at this time and feels she is unable to stand or sit for any period of time and thus, in that regard is functionally unable to return to her normal vocational activity. She has discontinued working at St. John's.

[R. 128]. For the Workers' Compensation rating, Dr. Simmons assessed a combined impairment of 10% to the body as a whole. He advised that: "there still may be a significant change if a very aggressive regimen can be overcome, but problem is she will continue with chronic discomfort in the low back area. She is to be seen again on an as-needed basis." [R. 128].

The next treatment record that appears in the administrative record from Dr. Simmons is dated July 10, 2000, over four years after the disability insurance expiration date of December 31, 1995.

## Discussion

As the Court pointed out to the Commissioner in its previous order, a treating physician's opinion is entitled to controlling weight if it is supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. [R. 340].[5] The ALJ was required to consider the medical evidence from Dr. Simmons in its entirety and to demonstrate that he had done so in his written decision. He did not do so in his first decision and the Court remanded the case accordingly. Perhaps because the Court mistakenly stated that Dr. Simmons said Plaintiff's injury was "permanent and debilitating" [R. 340,] in his second decision, the ALJ focused upon whether or not the word "permanent" appeared in either the transcript of Dr. Simmons' testimony or in his records. Because it did not, the ALJ posited that Dr. Simmons had imposed only a period of temporary total disability for Plaintiff and he cited the Certification of Treatment form stating an estimated period of disability to be 3 to 4 weeks, as evidence that Dr. Simmons did not intend to characterize Plaintiff's condition as permanent. [R. 286].

The reasons given by the ALJ for not according controlling weight to Dr. Simmons' deposition testimony regarding Plaintiff's debilitating pain were that Dr.

---

[5] See 20 C.F.R. § 404.1527(d)(2); *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir.2003) (When evaluating the opinion of a treating physician, the ALJ must follow a sequential analysis. In the first step of this analysis, he should consider whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic technique and is consistent with the other substantial evidence in the record) (internal quotation marks omitted).

Simmons meant Plaintiff's condition was temporary and that Dr. Simmons believed Plaintiff was capable of swimming, walking and general exercises, activities which do not comport with being physically disabled. [R. 286]. Plaintiff contends the multiple other documents in the record from Dr. Simmons, taken together with Dr. Simmons' testimony, offer substantial evidence of a continuing disability during the relevant time period. [Plaintiff's brief, p. 5]. Plaintiff's argument has merit.

Dr. Simmons' treatment records include examinations and consultations with Plaintiff on October 5, 1990 and November 9, 1990 and his report of March 23, 1993 indicated he had followed her again through 1992.[6] [R. 128, 130]. Dr. Simmons also mentioned Plaintiff had been undergoing physical therapy during that treatment time period, although those records are not included in the administrative record before the Court. Dr. Simmons clearly believed Plaintiff's period of total disability extended beyond the 3 to 4 weeks he had first estimated on June 11, 1990. [R. 130-132, 155-156].

The ALJ also appears to have adopted the estimation of the consultative medical expert that Plaintiff was able to do 80% to 90% of her daily activities in September 1990. [R. 286]. However, this assumption was based upon the CE's impression that Dr. Simmons did not treat Plaintiff after September 1990. [R. 417]. As noted above, the record indicates otherwise. Dr. Simmons was clearly of the opinion that Plaintiff's condition would remain "debilitating" until she could lose a sufficient amount of weight to make her eligible for surgery. [R. 155-156]. She had not done so as of March 23,

---

[6] No treatment records from 1992 appear in the administrative record in this case.

1993, when Dr. Simmons said "...problem is she will continue with chronic discomfort in the low back area." [R. 128]. It was this evidence that the ALJ failed to discuss in his first decision and that he failed to properly weigh in this, his second decision.

The ALJ implied that Dr. Simmons' treatment notes conflicted with his opinion that Plaintiff's pain was debilitating. [R. 286]. He referred to Dr. Simmons' suggestion that swimming, walking and general exercises would be of benefit in weight reduction efforts. The ALJ deduced that, because Dr. Simmons believed Plaintiff was capable of these physical activities he could not simultaneously hold the opinion that she was physically disabled. [R. 286]. Review of Dr. Simmons' treatment records reveals that he recommended these activities as a means of losing weight and getting Plaintiff's back "in condition" for surgery. [R. 130]. Nowhere in any of Dr. Simmons' treatment records is there any indication that he believed Plaintiff could engage in these activities to the extent that she was able to perform work activities. Nor is there any suggestion that he believed Plaintiff was malingering or exaggerating her symptoms. An ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

Furthermore, the ALJ did not explain what weight he assigned Dr. Simmons' opinion in assessing Plaintiff's RFC. After determining Dr. Simmons' opinion was not entitled to controlling weight, the ALJ was required to explain how much weight he ultimately accorded the opinion of Dr. Simmons. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) ("Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and

laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected."). The ALJ obviously rejected Dr. Simmons' opinion of debilitating pain. However, he did not explain what weight he accorded Dr. Simmons' clinical findings of restricted range of motion, restricted rotation, positive SLR, numbness of the right foot, right leg sciatica, hip pain, difficulty sitting and standing up and significant pain in assessing Plaintiff's RFC. *See* 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p, 1996 WL 374188, at *5; *Doyal*, 331 F.3d at 762 (ALJ must "give good reasons in [the] notice of determination or decision" for the weight assigned to a treating physician's opinion). The decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*

Moreover, the ALJ improperly discounted Dr. Simmons' opinion about Plaintiff's limitations in favor of the opinion of a consulting physician, who testified he did not examine Plaintiff and that he would have to examine a patient and have an MRI or mylegram with CT done before providing a therapeutic recommendation. [R. 424-426]. "[T]he opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant." *Williams,* 844 F.2d at 757; *see also* 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(d)(1), (2); *see also* Soc. Sec. R. 96-6p, 1996 WL 374180, at *2. "The treating physician's opinion is given particular weight because of his 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from

14

reports of individual examinations, such as consultative examinations or brief hospitalizations.' " *Doyal,* 331 F.3d at 762 (quoting 20 C.F.R. §§ 416.927(d)(2)). The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(1), (2); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2. Thus, the ALJ erred in rejecting the treating-physician opinion of Dr. Simmons in favor of the non-examining, consulting-physician opinion of Dr. Janese absent a legally sufficient explanation for doing so.

Finally, the ALJ's holding that Plaintiff "can be held responsible for not doing her part in stopping her discomfort" by losing weight is inappropriate. The ALJ did not make the findings necessary to deny the claim on this basis. *See* Soc. Sec. R. 82-59, 1982 WL 31384, at *1 ("In reviewing the impact of a claimant's failure to undertake treatment on a determination of disability, we consider four elements: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse"); *Frey v. Bowen,* 816 F.2d 508, 517 (10th Cir.1987); *see also* 20 C.F.R. § 404.1530.

## Conclusion

As set forth above, the Court concludes the ALJ's determination that Plaintiff is not disabled is not supported by the record. The issue, then, is whether the Court should remand the case for further administrative proceedings or for benefits. Plaintiff's claim, which relates to the time period between June 11, 1990 and

December 31, 1995, has been pending since 2000 and has been previously reversed and remanded by the Court.  Despite having been given the opportunity to correct the prior prejudicial failures, the Commissioner has not done so.  Plaintiff should not be subjected to repeated delay in a proper determination of her claim.  Given the length of delay and the fact that the uncontroverted evidence supports a finding of disability, the Court determines that the proper remedy in this case is an immediate award of benefits.  *See Williams v. Bowen*, 844 F.2d 748 (10th Cir. 1988) citing *Dollar v. Bowen*, 821 F.2d 530 (10th Cir. 1987) (Where the record fully supports a determination that the claimant is disabled as a matter of law and is entitled to benefits, reversal for the immediate award of benefits is appropriate).

Accordingly, this Court exercises its discretion and orders that this case be REVERSED and REMANDED to the Commissioner for the immediate calculation and award of benefits.

SO ORDERED this 1st day of October, 2007.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE